IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARMSTRONG TELECOMMUNICATIONS,          CIVIL ACTION - LAW
INC., a corporation,

       Plaintiff,

v.                               Case No. 2:18-cv-00787

CHR SOLUTIONS, INC., a corporation,

       Defendants

## DEFENDANT CHR SOLUTIONS, INC.'S ANSWER, COUNTERCLAIM TO PLAINTIFF'S COMPLAINT, AND FIRST AMENDED THIRD-PARTY CLAIMS

Defendant CHR Solutions, Inc. ("CHR" or "Defendant"), by and through its undersigned counsel, hereby files its Answer, Counterclaim to Plaintiff's Complaint, and First Amended Third-Party Claims as follows:

## I.    INTRODUCTION

1.    With respect to Paragraph 1 in Plaintiff's Complaint, CHR admits that Armstrong is alleging breach of contract, fraud, and defamation.  CHR otherwise denies the allegations in Paragraph 1 of Plaintiff's Complaint.

## II.    PARTIES

2.    CHR admits the allegations in Paragraph 2 of Plaintiff's Complaint.

3.    CHR admits the allegations in Paragraph 3 of Plaintiff's Complaint.

4.    CHR admits the allegations in Paragraph 4 of Plaintiff's Complaint.

### III.   JURISDICTION AND VENUE

5.      CHR admits the allegations in Paragraph 5 of Plaintiff's Complaint.

6.      CHR denies the allegations in Paragraph 6 of Plaintiff's Complaint.

7.      CHR admits it entered into a contract with Armstrong, and admits it conducted business activities in Butler County. CHR is without sufficient information or knowledge to admit or deny the contract was entered in Butler, Pennsylvania; those allegations, therefore, stand denied. The MSA speaks for itself and is the best evidence of its contents; therefore CHR denies all other allegations in Paragraph 7 contrary to the MSA provisions.

8.      CHR admits the allegations in Paragraph 8 of Plaintiff's Complaint.

9.      CHR denies the allegations in Paragraph 9 of Plaintiff's Complaint.

### IV.   FACTS COMMON TO ALL COUNTS

**The ESD Project**

10.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 10 of Plaintiff's Complaint; those allegations, therefore, stand denied.

11.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 11 of Plaintiff's Complaint; those allegations, therefore, stand denied.

12.     CHR admits that Armstrong invited CHR to propose a scope of work for outside plant engineering and field services that would provide broadband services in rural New York State. CHR is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 12 of Plaintiff's Complaint; those allegations, therefore, stand denied.

2

13.     With respect to Paragraph 13 in Plaintiff's Complaint, CHR admits submitting a proposed scope of work as invited by Armstrong, but CHR is without sufficient information or knowledge to admit or deny whether CHR's proposal was part of a "bidding process" as alleged; those allegations, therefore, stand denied.

14.     CHR admits the allegations in Paragraph 14 of Plaintiff's Complaint.

15.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 15 of Plaintiff's Complaint; those allegations, therefore, stand denied.

16.     With respect to Paragraph 16 in Plaintiff's Complaint, CHR admits it presented to Armstrong a certain proposal titled "Outside Plant Engineering Services Statement of Work Summary Format." CHR is without sufficient information or knowledge to admit or deny whether CHR's proposal was part of a 'bidding process;" those allegations, therefore stand denied. The MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations contrary to the MSA provision.

17.     CHR admits the allegations in Paragraph 17 of Plaintiff's Complaint.

18.     With respect to Paragraph 18 of Plaintiff's Complaint, CHR admits it entered into a Master Services Agreement as of May 30, 2017 ("MSA"). CHR denies that Exhibit A is an accurate copy of the MSA; therefore, CHR denies the remaining allegations in Paragraph 18 of Plaintiff's Complaint.

**The Economics of the ESD Project**

19.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 19 of Plaintiff's Complaint; those allegations, therefore, stand denied.

20.     CHR denies the allegations in Paragraph 20 of Plaintiff's Complaint.

21      CHR denies the allegations of Paragraph 21 of Plaintiff's Complaint.

**The Steps of the ESD Project**

22.     CHR admits the allegations in Paragraph 22 of Plaintiff's Complaint.

23.     CHR admits the allegations in Paragraph 23 of Plaintiff's Complaint.

24.     CHR denies the allegations in Paragraph 24 of Plaintiff's Complaint.

25.     CHR admits the allegations in Paragraph 25 of Plaintiff's Complaint.

26.     CHR admits the allegations in Paragraph 26 of Plaintiff's Complaint.

27.     CHR admits the allegations in Paragraph 27 of Plaintiff's Complaint.

28.     CHR admits that CHR pledged to turn over the completed network and its required data to Armstrong.  CHR is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 28 of Plaintiff's Complaint; those allegations, therefore, stand denied.

**CHR's Performance of the ESD Project**

29.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 29 of Plaintiff's Complaint; those allegations, therefore stand denied.

30.     CHR denies the allegations in Paragraph 30 of Plaintiff's Complaint.

31.     CHR denies that it provided initial fieldwork with an error rate that far exceeded industry standards and expectations.  CHR is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 31 of Plaintiff's Complaint; those allegations, therefore, stand denied.

32.     CHR denies the allegations in Paragraph 32 of Plaintiff's Complaint.

33.     CHR denies the allegations in Paragraph 33 of Plaintiff's Complaint.

34.     CHR denies the allegations in Paragraph 34 of Plaintiff's Complaint.

35.     CHR denies the allegations in Paragraph 35 of Plaintiff's Complaint.

36.     CHR denies that staking sheets designed to instruct subcontractors to install the fiber were not constructible in numbers far above industry standards. CHR is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 36 of Plaintiff's Complaint; those allegations, therefore, stand denied.

37.     CHR denies the allegations in Paragraph 37 of Plaintiff's Complaint.

38.     CHR denies the allegations in Paragraph 38 of Plaintiff's Complaint.

39.     CHR denies the allegations in Paragraph 39 of Plaintiff's Complaint.

40.     CHR admits the allegations in Paragraph 40 of Plaintiff's Complaint.

41.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 41 of Plaintiff's Complaint; those allegations, therefore, stand denied.

42.     CHR denies the allegations in Paragraph 42 of Plaintiff's Complaint.

43.     CHR denies the allegations in Paragraph 43 of Plaintiff's Complaint.

44.     CHR denies the allegations in Paragraph 44 of Plaintiff's Complaint.

45.     CHR denies the allegations in Paragraph 45 of Plaintiff's Complaint.

46.     CHR is without sufficient information or knowledge to admit or deny the allegations in Paragraph 46 of Plaintiff's Complaint; those allegations, therefore, stand denied.

47.     CHR is without sufficient information or knowledge to admit or deny the allegations in Paragraph 47 of Plaintiff's Complaint; those allegations, therefore, stand denied.

48.     CHR denies the allegations in Paragraph 48 of Plaintiff's Complaint.

49.     CHR denies the allegations in Paragraph 49 of Plaintiff's Complaint.

50.     CHR admits the allegations in Paragraph 50 of Plaintiff's Complaint.

51.     CHR denies the allegations in Paragraph 51 of Plaintiff's Complaint.

52.     CHR denies the allegations in Paragraph 52 of Plaintiff's Complaint.

53.     CHR denies the allegations in Paragraph 53 of Plaintiff's Complaint.

54.     CHR denies the allegations in Paragraph 54 of Plaintiff's Complaint.

55.     CHR admits that CHR did not upload LODE Data until after construction was complete. The MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations contrary to the MSA provisions. CHR also denies the remaining allegations in Paragraph 55 to the extent they suggest CHR improperly billed Armstrong for services rendered under the MSA.

56.     CHR is without sufficient information or knowledge to admit or deny subcontractors negotiated directly with Armstrong so that Armstrong would absorb the costs for warehouse fees and stand down damages. CHR denies the remaining allegations in Paragraph 56 of Plaintiff's Complaint.

57.     CHR denies the allegations in Paragraph 57 of Plaintiff's Complaint.

58.     CHR denies the allegations in Paragraph 58 of Plaintiff's Complaint.

59.     CHR denies the allegations in Paragraph 59 of Plaintiff's Complaint.

60.     CHR is without sufficient information to admit or deny the allegations in Paragraph 60 of Plaintiff's Complaint; those allegations, therefore, stand denied.

61.     CHR denies breaching the MSA.  CHR is without sufficient information or knowledge to admit or deny the allegations in Paragraph 61 of Plaintiff's Complaint regarding Armstrong's performance of the Grant Disbursement Agreements.

62.     CHR is without sufficient information or knowledge to admit or deny the allegations in Paragraph 62 of Plaintiff's Complaint; those allegations, therefore, stand denied.

63.     CHR is without sufficient information or knowledge to admit or deny the allegations in Paragraph 63 of Plaintiff's Complaint; those allegations, therefore, stand denied.

64.     With respect to Paragraph 64 in Plaintiff's Complaint, CHR denies being unable to satisfy its responsibilities on the ESD Project, but CHR admits that Armstrong nevertheless repeatedly complained about CHR's performance.

65.     CHR denies the allegations in Paragraph 65 of Plaintiff's Complaint.

66.     CHR denies the allegations in Paragraph 66 of Plaintiff's Complaint.

67.     CHR denies the allegations in Paragraph 67 of Plaintiff's Complaint.

68.     CHR denies the allegations in Paragraph 68 of Plaintiff's Complaint.

69.     CHR admits invoicing Armstrong. The MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations contrary to the MSA provisions. CHR also denies the remaining allegations in Paragraph 69 to the extent they suggest CHR improperly invoiced Armstrong for services rendered under the MSA.

70.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 70 of Plaintiff's Complaint regarding Armstrong's alleged reliance on unspecified CHR promises about unidentified work.  CHR admits Armstrong was entitled to rely on CHR's promises and representations made under the terms of the MSA.

71.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 71 of Plaintiff's Complaint regarding Armstrong's alleged reliance on unspecified CHR promises about unidentified work.  CHR admits Armstrong was

entitled to rely on CHR's promises and representations made under the terms of the MSA, and CHR admits that it holds itself out as an expert in providing turnkey OSP Engineering Services.

72.     CHR denies the allegations in Paragraph 72 of Plaintiff's Complaint.

73.     CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 73 of Plaintiff's Complaint; those allegations, therefore, stand denied.

74.     CHR denies that it has substantially delayed the installation and provision of new customers to Armstrong.  CHR is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 74 of Plaintiff's Complaint.

75.     CHR denies the allegations contained in Paragraph 75 of Plaintiff's Complaint. .

## COUNT I – BREACH OF CONTRACT

76.     CHR incorporates by reference, as if set forth fully verbatim, its answers and defenses to Paragraphs 1 through 75 of Plaintiff's Complaint.

77.     CHR admits Armstrong and CHR entered into a written contract (i.e., the MSA). The MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations in Paragraph 77 contrary to the MSA provisions.

78.     Denied. In addition, the MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations in Paragraph 78 contrary to the MSA provisions.

79.     Denied. In addition, the MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations in Paragraph 79 contrary to the MSA provisions.

80.     Denied. In addition, the MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations in Paragraph 80 contrary to the MSA provisions.

81.     CHR denies the allegations in Paragraph 81 of Plaintiff's Complaint.

82.     CHR denies the allegations in Paragraph 82 of Plaintiff's Complaint.

83.     CHR denies the allegations in Paragraph 83 of Plaintiff's Complaint.

84.     CHR denies the allegations in Paragraph 84 of Plaintiff's Complaint.

85.     CHR denies the allegations in Paragraph 85 of Plaintiff's Complaint.

86.     CHR denies the allegations in Paragraph 86 of Plaintiff's Complaint.

87.     CHR denies CHR failed to submit accurate designs. CHR is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 87 of Plaintiff's Complaint; those allegations, therefore, stand denied.

88.     CHR denies the allegations in Paragraph 88 of Plaintiff's Complaint.

89.     CHR denies the allegations in Paragraph 89 of Plaintiff's Complaint.

90.     With respect to Paragraph 90 of Plaintiff's Complaint, CHR admits that a contractor attached to 548 poles over 20.25 miles without having the required authorizations from the pole owners, and CHR further admits that Armstrong performed an audit and corrected the work.  CHR denies the remaining allegations in Paragraph 90 of Plaintiff's Complaint.

91.     CHR denies a material breach. CHR is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 91 of Plaintiff's Complaint; those allegations, therefore, stand denied

92.     Denied. In addition, the MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations contrary to the MSA provisions.

93.     Denied. In addition, the MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations contrary to the MSA provisions.

In response to Plaintiff's prayer for relief in the Paragraph that begins "Wherefore," CHR denies any allegations contained therein and deny that they are in any way responsible or indebted to Plaintiff in any manner or amount whatsoever.

## COUNT II - DEFAMATION

94.    CHR incorporates by reference, as if set forth fully verbatim, its answers and defenses to Paragraph 1 through 93 of Plaintiff's Complaint.

95.    CHR denies the allegations in Paragraph 95 of Plaintiff's Complaint.

96.    CHR denies the allegations in Paragraph 96 of Plaintiff's Complaint.

97.    CHR denies the allegations in Paragraph 97 of Plaintiff's Complaint.

98.    CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 98 of Plaintiff's Complaint; those allegations, therefore, stand denied.

99.    CHR denies the allegations in Paragraph 99 of Plaintiff's Complaint.

In response to Plaintiff's prayer for relief in the Paragraph that begins "Wherefore," CHR denies any allegations contained therein and deny that they are in any way responsible or indebted to Plaintiff in any manner or amount whatsoever.

## COUNT III – TRADE LIBEL/INJURIOUS FALSEHOOD

100.    CHR incorporates by reference, as if set forth fully verbatim, its answers and defenses to Paragraph 1 through 99 of Plaintiff's Complaint.

101.    CHR denies the allegations in Paragraph 101 of Plaintiff's Complaint.

102.    CHR denies the allegations in Paragraph 102 of Plaintiff's Complaint.

103.    CHR denies the allegations in Paragraph 103 of Plaintiff's Complaint.

104.    CHR denies the allegations in Paragraph 104 of Plaintiff's Complaint.

105.    CHR is without sufficient information or knowledge to admit or deny allegations contained in Paragraph 105 of Plaintiff's Complaint; those allegations, therefore, stand denied.

In response to Plaintiff's prayer for relief in the Paragraph that begins "Wherefore," CHR denies any allegations contained therein and deny that they are in any way responsible or indebted to Plaintiff in any manner or amount whatsoever.

## COUNT IV - FRAUD

106.    CHR incorporates by reference, as if set forth fully verbatim, its answers and defenses to Paragraph 1 through 105 of Plaintiff's Complaint.

107.    CHR denies the allegations in Paragraph 107 of Plaintiff's Complaint.

108.    CHR admits the allegations in Paragraph 108 of Plaintiff's Complaint.

109.    CHR denies the allegations in Paragraph 109 of Plaintiff's Complaint.

110.    CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 110 of Plaintiff's Complaint; those allegations, therefore, stand denied.

111.    CHR denies the allegations in Paragraph 111 of Plaintiff's Complaint.

112.    CHR denies the allegations in Paragraph 112 of Plaintiff's Complaint.

113.    CHR denies the allegations in Paragraph 113 of Plaintiff's Complaint.

114.    CHR denies the allegations in Paragraph 114 of Plaintiff's Complaint.

115.    CHR denies the allegations in Paragraph 115 of Plaintiff's Complaint.

116.    CHR denies the allegations in Paragraph 116 of Plaintiff's Complaint.

In response to Plaintiff's prayer for relief in the Paragraph that begins "Wherefore," CHR denies any allegations contained therein and denies that they are in any way responsible or indebted to Plaintiff in any manner or amount whatsoever.

## COUNT V – NEGLIGENT MISREPRESENTATION

117.    CHR incorporates by reference, as if set forth fully verbatim, its answers and defenses to Paragraph 1 through 116 of Plaintiff's Complaint.

118.    CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 118 of Plaintiff's Complaint; those allegations, therefore, stand denied.

119.    CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 119 of Plaintiff's Complaint; those allegations, therefore, stand denied.

120.    CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 120 of Plaintiff's Complaint; those allegations, therefore, stand denied.

121.    CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 121 of Plaintiff's Complaint; those allegations, therefore, stand denied.

122.    CHR denies the allegations in Paragraph 122 of Plaintiff's Complaint.

123.    Denied. In addition, the MSA speaks for itself and is the best evidence of its contents. CHR denies all allegations contrary to the MSA provisions.

124.    CHR denies the allegations in Paragraph 124 of Plaintiff's Complaint.

125.    CHR is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 125 of Plaintiff's Complaint; those allegations, therefore, stand denied. In addition, CHR admits Armstrong was entitled to rely on CHR's promises and representations made under the terms of the MSA.

126.    CHR denies the allegations in Paragraph 126 of Plaintiff's Complaint.

In response to Plaintiff's prayer for relief in the Paragraph that begins "Wherefore," CHR denies any allegations contained therein and deny that they are in any way responsible or indebted to Plaintiff in any manner or amount whatsoever.

## AFFIRMATIVE DEFENSES

By way of further defense, if any is necessary, Defendant CHR alleges the following defenses or affirmative defenses to Plaintiff's Complaint:

1.    Plaintiff's Complaint fails to state claims upon which relief can be granted.

2.    Plaintiff has failed to join all necessary and indispensable parties.

3.    All allegations in Plaintiff's Complaint which are not specifically admitted are denied.

4.    The damages that Plaintiff seeks to recover in this lawsuit are a result of its own actions, and Plaintiff is barred from recovering damages for injuries which it alone has caused.

5.    Plaintiff has failed to mitigate its damages.

6.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

7.    Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

8.    Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel, equitable estoppel, promissory estoppel and/or quasi-estoppel.

9.    Plaintiff's claims are barred, in whole or in part, by the doctrine of ratification.

10.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's own fraud.

11.    Plaintiff's claims are barred, in whole or in part, because CHR was excused from performing under the MSA by one or more of: (a) Armstrong's prior material breach or

anticipatory breach, (b) failure of consideration, or (c) Armstrong's conduct preventing (or materially interfering with) CHR's performance.

12.     Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

13.     The parol evidence rule and the merger doctrine bar Plaintiff from seeking to alter, modify or vary the unambiguous terms of the MSA.

14.     The parol evidence rule and the merger doctrine bar Plaintiff from recovering on any cause of action that would require altering or varying the plain and unambiguous terms of the MSA.

15.     With respect to Plaintiff's claims for defamation, trade libel and injurious falsehood, CHR alleges the defenses of opinion, truth, privilege, and justification.

16.     Any award of exemplary damages is improper to the extent that it exceeds the limits imposed by the United States Constitution, Pennsylvania Constitution or the New York Constitution.

17.     To the extent Armstrong recovers a judgment for any monetary damages against CHR, CHR is entitled to offset or credit to the extent of CHR's performance in accordance with the MSA.

18.     By alleging the foregoing defenses, CHR does not represent that it will bear the burden of proof on any of the foregoing defenses.  In addition, CHR does not intend to waive its right to require Plaintiff to bear the burden of proof on any claim for which Plaintiff must bear the burden of proof under the law.

19.     CHR specifically does not waive any defenses provided by statute or the Federal Rules of Civil Procedure, pursuant to FRCP 8, FRCP 12, or otherwise.

20.     CHR reserves the right to assert all other affirmative defenses to the extent that further investigation or discovery reveals facts to show that any such defenses may be pertinent herein.

## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Additionally, CHR, as counter-plaintiff and third-party plaintiff, asserts the following counterclaims for affirmative relief against Armstrong, and third-party claims against Vantage Point Solutions and Virginia Gardea:

## I.      PARTIES, JURISDICTION AND VENUE

1.     The matters in controversy exceed $75,000, exclusive of interest and costs, and the parties are citizens of different states.  Accordingly, this Court has jurisdiction under 28 U.S. Code §1332.  CHR asserts these counterclaims and third-party claims under the authority of Rules 13 and 14 of the Federal Rules of Civil Procedure.

2.     CHR is a Texas corporation with its principal place of business in Houston, Texas.  Subject to its dismissal motion, CHR has appeared and answered.

3.     Armstrong is a Pennsylvania corporation with its principal place of business in Pennsylvania.  Armstrong voluntarily submitted to this venue and jurisdiction by filing its complaint here.

4.     Vantage Point Solutions (VPS) Inc. and VANTAGE POINT SOLUTIONS, INC. (collectively, "Vantage Point") is one or more corporation(s) formed under the laws of South Dakota with its principal place of business in South Dakota.  Each Vantage Point defendant may be served by serving its Chief Executive Officer and Agent for Service, Larry Dean Thompson, at 2211 North Minnesota Street, Mitchell, South Dakota 57301, or wherever he may be found.

5.      Virginia "Ginny" Gardea ("Gardea") is an individual residing in Oregon.  Gardea may be served at 8596 S. Heinz Rd., Canby, Oregon 97013, or wherever she may be found.

## II.      FACTUAL BACKGROUND

6.      CHR and Armstrong entered into a May 30, 2017 Master Services Agreement (the "MSA") which incorporated a Work Order as Appendix A (the "Work Order"), and the Work Order in turn incorporated CHR's Outside Plant Engineering Services, Statement of Work #2506, Summary Format (the "Statement of Work").  As provided in Section 22 of the MSA, these three documents (together, the "Contract") constituted the complete agreement of the parties. A true and accurate copy of the Contract is attached hereto and incorporated by reference as **Exhibit 1**.

### A.      <u>The Contract</u>

7.      Under the Contract with Armstrong, CHR agreed to design, and supervise the installation of, approximately 2,000 miles of broadband fiber network in rural New York State.

8.      CHR also agreed under the Contract to prepare Permits to Attach from the various owners of utility poles to which the fiber and other broadband equipment would have to be connected.

9.      CHR relied on Armstrong to timely provide the essential direction CHR would need in order to perform CHR's contractual duties.  CHR thus relied on Armstrong to provide qualified personnel, reliable information, sound engineering, and prompt, reliable decisions.

10.      Armstrong failed to consistently provide any of this.

11.      Specifically, Armstrong named Kevin Young as its designated representative, but then gave decision-making authority to its Vice President of Regulatory Affairs, Shawn Beqaj.

Rather than promptly obtaining and providing Armstrong's design and supply decisions, however, Mr. Beqaj then asked CHR to help him manage Kevin Young.

12.     CHR's work under the Contract was materially delayed and otherwise impaired by Armstrong's failure.

13.     CHR entered into the Contract in reliance on Armstrong's representations that it had already identified essential hub site locations and transport routes.

14.     These representations were false, and the absence of this promised data caused substantial delays.

15.     Armstrong delayed in providing essential design criteria to CHR, and then changed the criteria and design procedures along the way, insisting that CHR substantially revise CHR's initial design drawings to comply with new criteria under Armstrong's subjective review, but without allowing CHR adequate time to do so.

16.     In an attempt to cooperate and accommodate Armstrong, CHR completed the redesign in an extremely short period of time – only to learn that the results of the redesign ultimately approved by Armstrong were substantially the same as the initial design Armstrong rejected.

17.     CHR worked long hours to expedite the redesign demanded by Armstrong, but CHR's ultimate designs were nevertheless delayed due to Armstrong's indecisiveness, poor communication, and lack of leadership.

18.     Armstrong further delayed the designs when Armstrong was awarded funding for additional territory adjoining (but outside of) CHR's scope, and Armstrong demanded redesign to accommodate that adjacent territory – without any adjustments to CHR's schedule.

19.     Moreover, it was Armstrong's decision to require CHR's designs before authorizing CHR to obtain Permits to Attach the fiber and equipment to specifically identified utility poles, as opposed to spending more money to speed the process by applying for Permits to Attach before the detailed designs were complete.

20.     By insisting on first completing the detailed design, Armstrong guaranteed the design process would slow the process for obtaining Permits to Attach.  By failing to promptly provide clear design criteria, and then by insisting on the redesign, Armstrong's own conduct caused the design and permitting delays of which Armstrong now complains.

21.     CHR could not request the Permits to Attach until after Armstrong first negotiated a Joint Pole Agreement with each pole owner, setting out the terms under which Armstrong would pay the pole owners for use of their poles.

22.     Armstrong dragged out negotiations and did not apply resources to the task, which delayed obtaining Joint Pole Agreements, and in turn also delayed CHR in applying for Permits to Attach.  This in turn delayed subsequent construction. Armstrong then managed the construction poorly, which led to further delays and damages. As CHR attempted to manage the construction, Armstrong continued to communicate with contractors while excluding CHR thus undermining CHR's ability to manage the contractors appropriately.

23.     Armstrong chose to blame CHR for all delays and increased cost caused by Armstrong.

**B.**     **Armstrong's Hiring of Vantage Point**

24.     Defendant Gardea was a CHR employee from August 11, 2015 until September 12, 2017.

25.     When hired, Gardea executed a Confidentiality, Nondisclosure, Non-Solicitation Agreement.

26.     At all times related to the bid process and negotiation of the Contract between Armstrong and CHR, Gardea played a central role in marketing and closing the Contract.  In fact, Gardea is the author of the Statement of Work Armstrong accepted.

27.     Gardea remained with CHR during the initial implementation of the Contract.

28.     Gardea resigned from CHR on September 12, 2017 and immediately began employment with Vantage Point, a direct competitor of CHR.

29.     Upon her resignation, Gardea once again executed an "Employee Confidentiality Agreement" re-iterating her obligations to CHR.  A true and accurate copy of the Employment Confidentiality Agreement is attached hereto and incorporated by reference as **Exhibit 2.**

30.     Within weeks of Gardea's change in employment, Armstrong began having unexplained and more urgent "issues" with CHR's work.

31.     On September 19, 2017, CHR's CEO Arun Pasrija ("Pasrija") contacted Vantage Point advising them of the agreement preventing Gardea from both using CHR confidential information and soliciting clients.  A true and accurate copy of the correspondence is attached hereto and incorporated by reference as **Exhibit 3**.

32.     After both Vantage Point and Gardea denied knowledge of any such agreement, CHR forwarded same in correspondence to both.   A true and accurate copy of the correspondence is attached hereto and incorporated by reference as **Exhibit 4.**

33.     Vantage Point CEO, Larry Thompson ("Thompson"), a former CHR Executive, assured Pasrija that Gardea would be employed in the western United States and she would have no part in the Armstrong project.

34.     On or about February 6-8, 2018, Gardea and other Vantage Point employees attended several sessions, meals, and a Vantage Point sponsored event at the NYSTA/TANE Issues Forum in Springfield Massachusetts with Armstrong's Vice President, Shawn Beqaj. Gardea and Baqaj were seen together in discussion on several occasions by CHR employee Brandon Johnson.

35.     On February 23, 2018, Beqaj notified CHR that Armstrong has added Vantage Point to "audit" CHR's work.

36.     Three days later, on February 26, 2018, Beqaj forwarded emails between he and CHR's Mike Beecher ("Beecher") discussing the project at issue to Gardea.  Beqaj inadvertently sent same to Gardea's CHR email address.   This communication was improper and in violation of the MSA between Armstrong and CHR, as well as, the "Employee Confidentiality Agreement" between Gardea and CHR.

37.     The following day, February 27, 2018, Beqaj demanded that CHR turn over its design data to Vantage Point.

38.     The information related to how CHR and Vantage Point bid on projects, design same, plan, negotiate and implement the designs, interact with the client (in this case Armstrong) and third parties, including property owners, utilities, permitting entities, as well as the implementation of personnel in the field, and the plotting, take off, and physical nature of the project are all proprietary.

39.     Thus, CHR requested a Non-Disclosure Agreement ("NDA") from Vantage Point related to such demanded proprietary data, but Vantage Point refused.

40.     Armstrong initially supported the idea of an NDA and pledged assistance, but then reversed course and declared there was no reason to execute any such document protecting CHR's work.

**C.      Termination of the Contract**

41.     On April 4, 2018, Armstrong demanded that CHR stop all work.

42.     Armstrong improperly stopped paying CHR in violation of the Contract.

43.     Armstrong hired Vantage Point to find fault with CHR's work, affix blame to CHR, and misappropriate CHR's work-in-progress, all under the guise of an "audit" of CHR's work.

44.     Not surprisingly, Vantage Point found little to like in CHR's work.

45.     Armstrong then purported to terminate the MSA without adequate notice and without paying CHR over $3,000,000 Armstrong still owes CHR after accounting for all offsets, payments and credits.

46.     Armstrong never intended to pay CHR or otherwise keep Armstrong's end of the bargain as agreed in the MSA, the Work Order and the Statement of Work.

47.     On information and belief, Vantage Point is now completing the project for Armstrong, using CHR's work obtained via the "audit" required by Armstrong.

**COUNT I**
**BREACH OF CONTRACT**
**( v. Armstrong)**

48.     CHR incorporates the allegations in Paragraphs 1 through 47 by reference.

49.     CHR and Armstrong entered into the Contract.

50.     CHR performed, tendered performance, or was excused from performing under the Contract when Armstrong breached its duty to provide timely decisions, criteria, direction,

and other input required for CHR's performance of the Contract, then again when Armstrong breached its duty to timely pay CHR for CHR's performance and reasonable expenses incurred through the date of termination. In addition, Armstrong has communicated and provided CHR information to Vantage Point and Gardea in violation of the MSA confidentiality. The inclusion of Vantage Point, and in particular Gardea is a violation of Armstrong's obligation to comply with the MSA, specifically, section 5.

51.     CHR was injured by Armstrong's breaches in an amount exceeding $3,000,000. CHR is entitled to recover its compensatory damages, consequential damages, and attorney fees.

WHEREFORE, CHR respectfully requests that this Court enter a judgment in its favor against Armstrong in an amount in excess of $3,000,000, which amount shall be proven at trial, together with interest, costs, reasonable attorney's fees and any other and further relief this Court deems just and proper.

### COUNT II
### FRAUDULENT INDUCEMENT
### (v. Armstrong)

52.     CHR incorporates the allegations in Paragraphs 1 through 51 by reference.

53.     Before CHR entered into the Contract, Armstrong:  (a) expressly represented the quality and extent of the work it had already completed identifying essential hub site locations and transport routes; (b) expressly (or implicitly) represented that Armstrong would promptly provide to CHR all of the data, criteria, and decisions CHR needed in order to perform under the Contract, (c) expressly (or implicitly) represented that Armstrong would appoint a liaison with sufficient qualifications and authority to promptly obtain and provide to CHR all of the data, criteria, and decisions CHR needed in order to perform under the Contract; and (d) expressly (or

implicitly) represented that Armstrong would adequately supervise its liaison so as to enable CHR to timely perform under the Contract.

54.     Each of these representations was false.

55.     CHR justifiably relied upon these false representations when CHR entered into the Contract, and CHR was injured as a result.

56.     CHR is entitled to recover its compensatory damages, consequential damages, and attorney fees.

WHEREFORE, CHR respectfully requests that this Court enter a judgment in its favor against Armstrong in an amount in excess of $3,000,000, which amount shall be proven at trial, together with punitive damages, interest, costs, reasonable attorney's fees and any other and further relief this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
### (v. Gardea)

57.     CHR incorporates the allegations in Paragraphs 1 through 56 by reference.

58.     Gardea and CHR entered into a valid Employee Confidentiality Agreement.

59.     Gardea breached her Employee Confidentiality Agreement by assisting Vantage Point in replacing CHR.

60.     CHR was injured by Gardea's breach in an amount exceeding $3,000,000.

61.     CHR is entitled to recover its compensatory damages, consequential damages, and attorney fees.

WHEREFORE, CHR respectfully requests that this Court enter a judgment in its favor against Gardea in an amount in excess of $3,000,000, which amount shall be proven at trial,

together with interest, costs, reasonable attorney's fees and any other and further relief this Court deems just and proper.

## COUNT IV
## TORTIOUS INTERFERENCE WITH A CONTRACT
### (v. Vantage Point and Gardea)

62.     CHR incorporates the allegations in Paragraphs 1 through 61 by reference.

63.     CHR entered into a valid contract with Armstrong.

64.     Vantage Point and Gardea knew CHR had a valid contract with Armstrong.

65.     Vantage Point and Gardea deliberately and outrageously caused Armstrong to breach its contract with CHR.  Vantage Point and Gardea were not privileged or justified in doing so.

66.     CHR was injured by this tortious interference in an amount exceeding $3,000,000. CHR is entitled to recover its compensatory damages, consequential damages, and punitive damages.

WHEREFORE, CHR respectfully requests that this Court enter a judgment in its favor against Vantage Point and Gardea in an amount in excess of $3,000,000, which amount shall be proven at trial, together with punitive damages, interest, costs, reasonable attorney's fees and any other and further relief this Court deems just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH A CONTRACT
### (v. Armstrong and Vantage Point)

67.     CHR incorporates the allegations in Paragraphs 1 through 66 by reference.

68.     Gardea had a valid Employee Confidentiality Agreement.

69.     Vantage Point knew Gardea had a valid Employee Confidentiality Agreement with CHR.  On information and belief, Armstrong also knew.

70.     Vantage Point and Armstrong each deliberately and outrageously caused Gardea to breach her Employee Confidentiality Agreement with CHR, or conspired with each other to do so. Vantage Point and Armstrong were not privileged or justified in doing so.

71.     CHR was injured by this tortious interference in an amount exceeding $3,000,000. CHR is entitled to recover its compensatory damages, consequential damages, and punitive damages.

WHEREFORE, CHR respectfully requests that this Court enter a judgment in its favor against Armstrong and Vantage Point in an amount in excess of $3,000,000, which amount shall be proven at trial, together with punitive damages, interest, costs, reasonable attorney's fees and any other and further relief this Court deems just and proper.

### COUNT  VI
### CIVIL CONSPIRACY
### (v. Vantage Point, Gardea and Armstrong)

72.     CHR incorporates the allegations in Paragraphs 1 through 71 by reference.

73.     Armstrong, Gardea, and Vantage Point combined or entered into an agreement to commit an unlawful act, or to do an otherwise lawful act by unlawful means.

74.     Armstrong hired Vantage Point to find fault with CHR's work, affix blame to CHR, and misappropriate CHR's work-in-progress, all under the guise of an "audit" of CHR's work.

75.     Armstrong, Vantage Point, and Gardea used this "audit" to replace CHR with Vantage Point.

76.     CHR was injured by this conspiracy in an amount exceeding $3,000,000

77.     CHR is entitled to recover its compensatory damages, consequential damages, and punitive damages jointly and severally.

WHEREFORE, CHR respectfully requests that this Court enter a judgment in its favor against Armstrong, Vantage Point and Gardea in an amount in excess of $3,000,000, which amount shall be proven at trial, together with punitive damages, interest, costs, reasonable attorney's fees and any other and further relief this Court deems just and proper.

### COUNT  VII
### COMMERCIAL, TRADE, OR BUSINESS DISPARAGEMENT
### (v. Vantage Point)

78.     CHR incorporates the allegations in Paragraphs 1 through 77 by reference.

79.     On information and belief, Vantage Point made false claims via an "audit" to Armstrong about CHR's compliance with the Contract, intending (or reasonably recognizing) that CHR would suffer financial loss as a result.

80.     Vantage Point knew its claims were false,or made its claims about CHR with reckless disregard of their truth or falsity.

81.     CHR was injured by this disparagement. CHR is entitled to recover its compensatory damages, consequential damages, and punitive damages.

WHEREFORE, CHR respectfully requests that this Court enter a judgment in its favor against Vantage Point in an amount in excess of $3,000,000, which amount shall be proven at trial, together with punitive damages, interest, costs, reasonable attorney's fees and any other and further relief this Court deems just and proper.

**JURY TRIAL DEMANDED**                Respectfully submitted,

*/s/ Kyle D. Black*
Kyle D. Black, Esq.
PA I.D. No.: 321023
Todd A. Gray, Esq.
PA I.D. No.: 207286
LEWIS, BRISBOIS, BISGAARD &

SMITH, LLP
429 Fourth Avenue, Suite 805
Pittsburgh, PA 15219
Todd.Gray@lewisbrisbois.com
Kyle.Black@lewisbrisbois.com
Phone: 412-567-5596
Fax: 412-567-5494
*Counsel for Defendant CHR Solutions, Inc.*


Pete T. Patterson, Esq.
TX I.D. No.: 15603580
4309 Yoakum Blvd., Ste. 2000
Houston, Texas 77006
Phone: (713) 874-6444
Fax: (713) 874-6445
pete@pyllp.com
*Counsel for Defendant CHR Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANT CHR SOLUTIONS, INC.'S ANSWER, COUNTERCLAIM TO PLAINTIFF'S COMPLAINT, AND FIRST AMENDED THIRD-PARTY CLAIMS was served via U.S. Mail and/or electronic mail upon the following this *25th day of January, 2019*.

Kevin C. Harkins, Esq.
Ingrid A. Bohme, Esq.
Cezanne S. Harrer, Esq.
COHEN & GRIGSBY, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222
kharkins@cohenlaw.com
ibohme@cohenlaw.com
charrer@cohenlaw.com
*Counsel for Plaintiff, Armstrong Telecommunications, Inc.*

S. Manoj Jegasothy, Esq.
Jessica G. Lucas, Esq.
707 Grant Street, Suite 3800
Pittsburgh, PA 15219
mjegasothy@grsm.com
jlucas@gordonrees.com
*Counsel for Third Party Defendants*
*Vantage Point Solutions, Inc. and Virginia Gardea*

*/s/ Kyle D. Black*
Kyle D. Black

28